**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:06cv384**

| | | |
|---|---|---|
| **ADAM L. SHOWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF DECISION** |
| **vs.** | ) | **AND ORDER** |
| | ) | |
| | ) | |
| **US AIRWAYS, INC.,** | ) | |
| **US AIRWAYS GROUP, INC.,** | ) | |
| **d/b/a US AIRWAYS, and** | ) | |
| **JANE DOE (US AIRWAYS** | ) | |
| **EMPLOYEE),** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion to

Dismiss and Motion for Summary Judgment [Doc. 14].

**I.      Procedural History**

The Plaintiff filed this action in the Superior Court of Mecklenburg

County, North Carolina, on June 19, 2006 against the Defendants US

Airways, Inc., US Airways Group, Inc. d/b/a US Airways, and "Jane Doe

(US Airways Employee)."  Service of process was made on the Defendant

US Airways, Inc. on or about August 8, 2006.  The Defendants US

Airways, Inc. and US Airways Group, Inc. (collectively "US Airways") filed a

timely Notice of Removal to this Court pursuant to 28 U.S.C. § 1441 on

September 7, 2006.  The subject matter jurisdiction of the Court pursuant

to 28 U.S.C. § 1332 is not in dispute.

On October 11, 2006, the Defendants US Airways, Inc. and US

Airways Group, Inc. filed an Answer, asserting insufficiency of service of

process and lack of service of process, among other defenses.  To date,

US Airways Group, Inc. has not been served with a summons and

Complaint, nor has the Defendant "Jane Doe (US Airways Employee)"

been identified or served with a summons and Complaint.

On September 14, 2007, the Defendants filed a motion pursuant to

Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure to

dismiss this action on the grounds that the Plaintiff has failed to serve

process on the Defendants US Airways Group, Inc. and "Jane Doe (US

Airways Employee)."  Further, the Defendants move pursuant to Rule 56 of

the Federal Rules of Civil Procedure for summary judgment as a matter of

law as to all of the Plaintiff's claims. [Doc. 14].  The Plaintiff, who is

represented by counsel, has not responded to the Defendants' Motions.

## II.    Defendants' Motion to Dismiss

The Defendants argue that US Airways Group, Inc. and "Jane Doe (US Airways Employee)" should be dismissed from this action because they have not been served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure.

"Personal defenses, such as lack of jurisdiction, may be deemed waived for failure to timely raise the defense, by formally submitting oneself to the jurisdiction of the court, or by 'submission through conduct.'"  United States ex rel. Combustion Systems Sales, Inc. v. Eastern Metal Products Fabricators, Inc., 112 F.R.D. 685, 687 (M.D.N.C. 1986) (quoting Neirbo Co. v. Bethlehem Shipbuilders Corp., 308 U.S. 165, 168 (1939)).  While the Defendant US Airways Group, Inc. properly raised the defenses of insufficiency of process and insufficiency of service of process in its Answer, see Fed. R. Civ. P. 12(b), the Court finds that the Defendant later waived these defenses by implication.  "Waiver has been inferred in a wide variety of situations, even when the defense has been formally raised in an answer, by conduct and inaction, such as entering an appearance, *filing motions and requesting relief*, or participating in hearings or discovery."

Combustion Systems Sales, 112 F.R.D. at 687 (collecting cases) (emphasis added). By joining in the motion for summary judgment and affirmatively requesting that the Court adjudicate this case on its merits, the Court finds that the Defendant Airways Group, Inc. has waived its defenses of insufficiency of process and insufficiency of service of process under Rule 12(b)(4) and (5) of the Federal Rules of Civil Procedure. Accordingly, the Motion to Dismiss [Doc. 14] is **DENIED** with respect to the Defendant US Airways Group, Inc.

With respect to the Defendant "Jane Doe (US Airways employee)", the Court finds that the Motion to Dismiss is well-taken. "When a defendant challenges the manner or sufficiency of service of process, '[t]he plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4.'" McRae v. Rogosin Converters, Inc., 301 F. Supp. 2d 471, 474 (M.D.N.C. 2004) (quoting Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003)). Having failed to respond to the Motion to Dismiss, the Plaintiff has not shown that service of process was effected on "Jane Doe (US Airways Employee)" in this case. Further, there is no evidence in the

record to indicate that the Plaintiff has even identified, much less served, the Jane Doe Defendant.

More than a year has passed since the Plaintiff filed this action, and the Plaintiff has failed to serve the Defendant "Jane Doe (US Airways Employee)" as required by Rule 4 of the Federal Rules of Civil Procedure. Accordingly, the Defendants' Motion to Dismiss [Doc. 14] is **GRANTED** with respect to the Jane Doe Defendant. The Plaintiff's claims against the Defendant "Jane Doe (US Airways Employee)" are hereby **DISMISSED.**

### III.    Defendants' Motion for Summary Judgment

The named Defendants US Airways, Inc. and US Airways Group, Inc. move for summary judgment as to all of the Plaintiff's claims.

#### A.    Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing that there is no genuine issue of

material fact rests with the moving party.  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).

Once the moving party presents evidence sufficient to carry its

burden under Rule 56, the non-moving party may not rest upon its

pleadings, but must affirmatively set forth, by affidavits or otherwise,

"specific facts showing that there is a genuine issue for trial."  Fed. R. Civ.

P. 56(e).

The Plaintiff has failed to respond to the Defendants' Motion, and

therefore, the facts presented by the Defendants are not in dispute.

"Although the failure of a party to respond to a summary judgment motion

may leave uncontroverted those facts established by the motion, the

moving party must still show that the uncontroverted facts entitle the party

to a 'judgment as a matter of law.'" Custer v. Pan American Life Ins. Co.,

12 F.3d 410, 416 (4th Cir. 1993).  "Therefore, even when the adverse party

fails to respond to the motion for summary judgment, the court must review

the motion and the materials before the court to determine if the moving

party is entitled to summary judgment as a matter of law."  Meyer v.

Qualex, Inc., 388 F. Supp. 2d 630, 634 (E.D.N.C. 2005); see also Fed. R.

Civ. P. 56(e) ("If the adverse party does not so respond, summary

judgment, *if appropriate*, shall be entered against the adverse party.")
(emphasis added).

## B. Facts

The Plaintiff's claims arises out of an incident at the Charlotte
Douglas International Airport while the Plaintiff was traveling on US
Airways.  The Plaintiff had purchased airline tickets for himself and six
minor children through Orbitz, an internet ticket purchasing website.
[Deposition of Adam Showell ("Showell Dep.") at 12-13].  On June 17,
2005, the Plaintiff and his party were traveling from the Bahamas to
Salisbury, Maryland and were making connecting flights in Ft. Lauderdale,
Florida, and Charlotte, North Carolina.  During the trip, the Plaintiff learned
that two of the minor children did not have seat assignments for the flight
from Charlotte to Salisbury.  [Id. at 38].

While in Ft. Lauderdale, the Plaintiff asked a ticketing agent whether
there were available seats on the flight from Charlotte to Salisbury for the
two minors.  The Plaintiff testified that the ticketing agent told him that
there were open seats on the flight, but the seats were located in an exit
row, so they could not be assigned to the two minor children.  [Id. at 18,

38-39].  The ticketing agent also showed the Plaintiff a monitor screen at a

kiosk which showed the open seats on the plane.  [Id. at 38-39].

When the Plaintiff and his party arrived in Charlotte, they went to the

gate where the connecting flight to Salisbury was set to depart.  A gate

agent there informed the Plaintiff that the flight was oversold[1], and that

there were only five seats available for his party.  Because two of the

minors did not have seat assignments, they were the first to be "bumped."

[Id. at 39; Affidavit of Monica Williams ("Williams Aff.") at ¶ 6].  The Plaintiff

was advised that there would be a request for volunteers willing to be

"bumped" from the flight so that the Plaintiff's entire party could board as a

group. [Showell Dep. at 23].  The Plaintiff protested, however, stating that

was "unsatisfactory."  [Id. at 41-42].

The Plaintiff approached three other US Airways employees about

the problem and was again advised that there would be a request for

volunteers about fifteen minutes before the plane was scheduled to leave.

---

[1]In fact, the plane was in excess of its weight limitations.  [Williams Aff. at ¶ 5].
When a captain determines that a plane is overweight, he informs the gate agent, who
decides whether passengers or excess baggage should be removed from the plane in
order to meet the weight limitation.  [Affidavit of Colm McIvor ("McIvor Aff. at ¶¶ 6, 7].
The Plaintiff admitted in his deposition that he was aware that the two seats could not
be occupied even though the seats were empty because "the plane was at the weight
load capacity . . . due to the cargo and the luggage." [Showell Dep. at 52-53].

[Id.].  The Plaintiff never heard a request for volunteers. [Id. at 23].

However, Monica Williams ("Williams"), a supervisor for U.S. Airways who

was present during the incident, states in her affidavit that passengers on

the flight were asked to volunteer to be "bumped" from the flight in

exchange for a free ticket. [Williams Aff. at ¶ 8].  There were no volunteers.

The Plaintiff was given the option of having the entire party catch a

later flight or selecting five members of his party to board the plane.

Shortly before the plane was due to pull away from the gate, the Plaintiff

chose five of the minor children to board the flight.  [Showell Dep. at 53-

54].  The five minor children boarded the plane, and the Plaintiff and his

fifteen-year-old son stayed behind.  [Plaintiff's Response to Interrogatory

No. 8].

The Plaintiff remained at the gate and continued to vigorously

protest, stating that he had been told by the ticketing agent in Ft.

Lauderdale that there were sufficient seats available for his party.  He

demanded that he and his son be allowed to board.  He threatened to call

the local newspaper and later did call the newspaper in order to put

pressure on the ticket agents.  [Showell Dep. at 24, 56-57].  The Plaintiff

testified that the gate supervisor told the Plaintiff that he and his son would

be put on a flight the next day and asked him to choose a departure time. The Plaintiff refused to give her a departure time because there were two empty seats on the departing plane. [Id. at 55]. When the Plaintiff refused to select a departure time, the gate supervisor told him that he needed to leave the concourse. [Id.]. The Plaintiff refused, claiming that he would stay in the concourse because he still had two paid unused tickets for the flight. [Williams Aff. at ¶ 14].

The Plaintiff began to yell and threaten Williams and other US Airways employees at the gate. Williams felt threatened by the Plaintiff's behavior. [Williams Aff. at ¶¶ 11-13]. The Plaintiff was asked to leave the terminal, and when the Plaintiff asked why, he was told that he was trespassing. [Showell Dep. at 37]. The Plaintiff refused to leave the terminal and continued to act in a threatening and disruptive manner. [Williams Aff. at ¶ 12]. Williams became concerned for the safety of the other passengers present due to the Plaintiff's belligerent behavior. The Plaintiff was asked to leave again, but he refused. [Id. at ¶ 14]. Williams called the airport police for assistance. [Id. at ¶ 15]. Two police officers responded. The officers informed the Plaintiff that he was trespassing and asked him multiple times to leave the concourse. The Plaintiff refused,

asserting that he was not breaking any law by refusing to leave. [Plaintiff's Response to Interrogatory No. 3; Showell Dep. at 16, 43-44; Affidavit of Cynthia Ensley ("Ensley Aff.") at ¶¶ 9, 13; Williams Aff. at ¶ 16]. Eventually, the officers told the Plaintiff that they would have to arrest him for trespassing if he did not leave, to which the Plaintiff responded, "Fine." [Showell Dep. at 44].

The officers arrested the Plaintiff for second degree trespass and led him away in handcuffs. The Plaintiff agreed that he was arrested "because [he] didn't comply with the policeman's directive to leave the area." [Id. at 19].

The Plaintiff posted bail of $500.00, which was later refunded to him. He spent the night at a local hotel and flew home the next day with his son on a US Airways flight, at no additional charge. [Id. at 60-62]. The charge for second degree trespass was ultimately dismissed for failure to prosecute.

The Plaintiff testified that his claim for damages include claims for $150 for the cost of the hotel stay, $25 for cab fare from the hotel to the airport, approximately "$2,000 or less" in attorney's fees for his defense on the criminal charge, $500 in attorney's fees for a lawyer in Maryland, and

an unspecified amount for emotional distress.  [Id.].  With respect to his claims for emotional distress, the Plaintiff testified that he was already seeing a counselor, Peg Bauer, regarding the separation from his wife, and that he mentioned the events at the Charlotte airport to her during one of those sessions because she wanted to hear about it.  [Id. at 62-63].  To date, the Plaintiff has not produced any psychological or psychiatric records indicating that he sought treatment for any emotional distress allegedly incurred as a result of this incident.

### C.    Analysis

#### 1.    Misrepresentation

In his first claim, the Plaintiff alleges that the Defendants "led the Plaintiff to believe and rely on the information that seats were available and therefore he purchased said seats and planned on said travel with the Defendant."  The Plaintiff further alleges that he relied on the representation that all seven seats were available at the time of purchase, and that this representation "evidently was false and known to be false or certainly verifiable at the time it was conveyed to the Plaintiff."  [Complaint at 2].

In order to sustain a claim for fraudulent misrepresentation, the Plaintiff must show that the Defendants are responsible for: "(1) a false representation or concealment of a material fact which is (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party." Willen v. Hewson, 174 N.C. App. 714, 718, 622 S.E.2d 187, 190-91 (2005), disc. review denied, 360 N.C. 491, 631 S.E.2d 520 (2006).

The Plaintiff has not produced any evidence that a misrepresentation was made at the time he purchased these tickets. Even assuming that a misrepresentation was made, there is no evidence to suggest that any of the Defendants or any representative of the Defendants made such misrepresentation at that time. It is undisputed that the Plaintiff purchased his tickets through Orbitz online, and not through the Defendants directly. Further, even assuming that a representation was made that these seats were available, and such representation could be attributed to one of the Defendants, there is no evidence that such representation was false or made with the intent to deceive at the time the Plaintiff purchased the tickets. Indeed, it was only later when the plane was loaded with passengers and cargo that it was determined that the plane was

overweight and that these two seats would not be available.  For these reasons, the Plaintiff's claim for misrepresentation must fail.

## 2.    Breach of Contract

Next, the Plaintiff alleges that the actions of the Defendants constituted "a violation and direct material breach" of the parties' contract. [Complaint at 4].

The Plaintiff has not presented a forecast of evidence which would tend to prove a breach of contract in this case.  The Plaintiff has not produced any documentation to indicate that he could not be refused boarding on the airplane, and the Plaintiff has admitted he has no such documentation.  [Plaintiff's Response to Request for Production No. 12]. Furthermore, according to the "US Airways Terms of Transportation," which provides the terms and conditions of the Plaintiff's ticket, US Airways may deny boarding to a passenger when there are not enough available seats.  However, the Terms require that US Airways "transport customers who have been denied boarding, whether voluntarily or involuntarily, on its next flight on which space is available at no additional cost to the customer."  [Terms of Transportation at 13].

US Airways satisfied its obligations under the Terms of Transportation in this case. The Plaintiff and his son were offered a flight out of Charlotte the next day, June 18, 2005. Although the Plaintiff initially refused to be re-booked, the Plaintiff and his son eventually flew out of Charlotte the following day on a US Airways flight, at no additional charge. [Plaintiff's Response to Request for Production No. 4].

The Terms of Transportation provide a remedy for passengers such as the Plaintiff who are involuntarily denied boarding, and US Airways complied with these Terms. For these reasons, the Court finds that there was no material breach of the parties' contract, and therefore, the Plaintiff's breach of contract must be dismissed.

### 3. Tortious Interference with Contract

In his third claim, the Plaintiff alleges that the Defendant Jane Doe tortiously interfered with the contract between the Plaintiff and US Airways, Inc. The Plaintiff further alleges that the Defendants, and in particular Jane Doe, "intentionally and without justification denied admission to the original connecting flight to plaintiff and all members of his party and to an alternate connecting flight when they knew or certainly learned that there were in

fact seats that became available for the Plaintiff and the minors who accompanied him." [Complaint at 4].

To prove a claim of tortious interference with contract, the Plaintiff must prove, among other things, that the Defendants interfered with "a valid contract between the plaintiff and a third person."  United Laboratories, Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).  In the present case, the Plaintiff's contract was with US Airways. The Defendant Jane Doe, who has neither been identified nor served, is alleged to have been a US Airways employee.  "As a matter of law, a party to the contract cannot be held liable for tortiously interfering with a contract to which it is a party – a third party must be involved."  Golden Needles Knitting and Glove Co. v. Dynamic Marketing, 766 F. Supp. 421, 429 (W.D.N.C. 1991).  For these reasons, the Court finds that the Plaintiff's claim for tortious interference with contract is without merit.

### 4.    False Imprisonment

In his fourth cause of action, the Plaintiff asserts a claim of false imprisonment, alleging that the Defendants "fraudulently, maliciously, willfully and wantonly had plaintiff arrested and escorted out of the US AIRWAYS terminal without justifiable cause . . . ." [Complaint at 4].

Under North Carolina law, "a cause of action in tort will lie for false imprisonment, based upon the 'illegal restraint of one's person against his will.'" Williams v. City of Jacksonville Police Dep't, 165 N.C. App. 587, 596, 599 S.E.2d 422, 430 (2004) (quoting Myrick v. Cooley, 91 N.C. App. 209, 212, 371 S.E.2d 492, 494 (1988)). "A false arrest, *i.e.*, one without proper legal authority, is one means of committing a false imprisonment." Id. "The existence of probable cause is an absolute bar" to a false arrest claim. Burton v. City of Durham, 118 N.C. App. 676, 682, 457 S.E.2d 329, 333, disc. review denied, 341 N.C. 419, 461 S.E.2d 756 (1995). Probable cause exists where the "facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information . . . are sufficient to warrant a prudent [person] in believing that the suspect had committed or was committing an offense." State v. Williams, 314 N.C. 337, 343, 333 S.E.2d 708, 713 (1985).

Based on the undisputed evidence presented by the Defendant, the Court concludes that the arresting officer had probable cause to arrest the Plaintiff for the offense of second-degree trespass:

> A person commits the offense of second degree trespass if, without authorization, he enters or remains on premises of another ... [a]fter he has been notified not to enter or remain

there by the owner, by a person in charge of the premises, by a lawful occupant, or by another authorized person....

N.C. Gen. Stat. § 14-159.13.  The undisputed facts in this case show that the Plaintiff remained at the US Airways gate after been repeatedly notified not to remain there by both US Airways employees and the airport police officers.  Based upon these facts, the officers had probable cause to arrest the Plaintiff for the offense of second degree trespass.  Accordingly, the Plaintiff's claim for false imprisonment against the Defendants must fail.

### 5.    Malicious Prosecution

In his fifth claim, the Plaintiff alleges that the Defendants "maliciously, grudgingly and without probable cause initiated criminal proceedings" against him for trespass.  [Complaint at 5].

To state a claim for malicious prosecution, the Plaintiff must show: "(1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff."  Best v. Duke University, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994).  The Plaintiff's claim for malicious prosecution fails for several reasons.  First, the undisputed evidence shows the Defendants did not initiate the criminal proceeding against the Plaintiff.  The airport police

officers decided to arrest the Plaintiff for refusing to leave the terminal. The Plaintiff presents no forecast of evidence tending to show that the Defendants or the Defendants' agents directed the officers to arrest the Plaintiff or that the Defendants or the Defendants' agents sought to press charges against the Plaintiff.  See Shillington v. K-Mart Corp., 102 N.C. App. 187, 196, 402 S.E.2d 155, 160 (1991) (dismissing malicious prosecution claim where police officers, not the defendant, initiated proceeding).  Furthermore, even if the evidence tended to show that the Defendants initiated the criminal proceedings against the Plaintiff, the Court notes that there is no evidence in the record that the Defendants acted with malice in summoning the authorities.  Finally, for the reasons previously stated, the undisputed evidence shows that there was probable cause to arrest the Plaintiff for trespass.  For these reasons, the Plaintiff's malicious prosecution claim will also be dismissed.

### 6.     Abuse of Process

The plaintiff's sixth claim is for abuse of process.  He alleges that the Defendants "without probable cause, with bad intent and with the purpose of harassing and pressuring the plaintiff, initiated criminal proceedings against the plaintiff." [Complaint at 5].

"The essential elements of abuse of process are: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceeding."  Beroth Oil Co. v. Whiteheart, 173 N.C. App. 89, 99-100, 618 S.E.2d 739, 747 (2005), disc. review denied, 633 S.E.2d 674 (2006).  "[A]buse of process . . . consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ."  Id. (quoting Stanback v. Stanback, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979)).

The Plaintiff has not come forth with any evidence to satisfy either element of this claim, and the Court finds no such evidence contained in the record.  Accordingly, the Plaintiff's abuse of process claim will also be dismissed.

### 7.    Defamation of Character

In his seventh claim, the Plaintiff alleges that the Defendants "maliciously and without justification accused the plaintiff of committing a crime involving moral turpitude thereby defaming the plaintiff in front of his minor child [and] others, and negatively affecting his good standing within the community and creating a criminal record."  [Complaint at 5].

"False accusations of crime or offenses involving moral turpitude are actionable as slander *per se*." Kroh v. Kroh, 152 N.C. App. 347, 355, 567 S.E.2d 760, 765 (2002) (quoting Dobson v. Harris, 352 N.C. 77, 79, 530 S.E.2d 829, 832 (2000), disc. review denied, 356 N.C. 673, 577 S.E.2d 120 (2003). "To establish a claim for slander *per se*, a plaintiff must prove: (1) that defendant's statement was slanderous *per se*, (2) the statement was false, and (3) the statement was published or communicated to and understood by a third person." Shillington, 102 N.C. App. at 194, 402 S.E.2d at 159.

A defamatory statement, however, may be subject to a qualified privilege. The North Carolina Court of Appeals has held that the qualified privilege applies where the defamatory statement is

> made (1) in good faith, (2) on subject matter (a) in which the declarant has an interest or (b) in reference to which the declarant has a right or duty, (3) to a person having a corresponding interest, right, or duty, (4) on a privileged occasion, and (5) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

Shillington, 102 N.C. App. at 194-95, 402 S.E.2d at 159 (quoting Shreve v. Duke Power Co., 97 N.C. App. 648, 650-51, 389 S.E.2d 444, 446 (1990)). If the communication is privileged, then the plaintiff must show that the defendant acted with actual malice in order to prevail. Shillington, 102

N.C. App. at 195, 402 S.E.2d at 159.  "Actual malice may be proven by a showing that the defamatory statement was made with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity."  Id.  If the plaintiff cannot show actual malice, then the qualified privilege "bars any recovery for the communication, even if the communication is false."  Id. (quoting Clark v. Brown, 99 N.C. App. 255, 263, 393 S.E.2d 134, 138 (1990)).

In the present case, after being told that he could not board the flight to Salisbury, the Plaintiff began threatening the US Airways employees present at the gate.  One of these employees, Monica Williams, testified that she became concerned for her safety and the safety of other passengers in the terminal due to the Plaintiff's belligerent behavior, and therefore, she asked him to leave.  When the Plaintiff asked why he was being told to leave, he was informed that he was trespassing.  He again refused to leave, and the airport police were summoned.

Under these circumstances, the uncontroverted facts reveal that the statement accusing the Plaintiff of trespassing in the terminal was not, in fact, false.  The Plaintiff remained at the US Airways gate after being repeatedly notified not to remain there by both US Airways employees and

the airport police officers. The Plaintiff's conduct would appear to satisfy all of the elements of the criminal trespass statute, N.C. Gen. Stat. § 14-159.13. Even if the accusation of trespass were not true, however, the Court concludes that, under the circumstances, the statement was protected by the qualified privilege. The Plaintiff has failed to present any evidence of actual malice to rebut the presumption of good faith. Accordingly, the Plaintiff's defamation claim is barred by the privilege and therefore will be dismissed.

### 8. Intentional and Negligent Infliction of Emotional Distress

The Plaintiff's eighth claim is for "intentional and negligent infliction of emotional distress." Specifically, the Plaintiff alleges that the Defendant acted "maliciously, negligently, willfully and wantonly" in (1) refusing to allow the Plaintiff and his minor son to board the flight although there was space available; (2) refusing to find another means of travel for the Plaintiff and the rest of his party "when an alternative method was ready and available"; (3) defaming the Plaintiff in front of his minor son "by having plaintiff arrested under false accusations"; and (4) causing an undue burden on the Plaintiff by initiating criminal proceedings against him. [Complaint at 6].

As one cannot act both negligently and willfully at the same time, the Court will assume that the Plaintiff is attempting to assert two alternative causes of action in this claim: one for intentional infliction of emotional distress, and another for negligent of emotional distress. "The essential elements of intentional infliction of emotional distress are '(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress[.]' " Foster v. Crandell, 638 S.E.2d 526, 537 (N.C. Ct. App.) (quoting Burgess v. Busby, 142 N.C. App. 393, 399, 544 S.E.2d 4, 7 (2001)), disc. review denied, 361 N.C. 567, 650 S.E.2d 602 (2007). To be considered "extreme and outrageous," conduct must "exceed[] all bounds usually tolerated by decent society." Guthrie v. Conroy, 152 N.C. App. 15, 21, 567 S.E.2d 403, 408 (2002). The determination of whether conduct was so extreme and outrageous as to support an action for such a claim is a question of law for the Court. Id.

With respect to a claim for negligent infliction of emotional distress, the Plaintiff must prove: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional

24

distress." Williams v. HomEq Servicing Corp., 646 S.E.2d 381, 385 (N.C. Ct. App. 2007) (quoting Johnson v. Ruark Obstetrics, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

Having carefully reviewed the evidence in this case, the Court concludes that the Defendants' actions were not so extreme and outrageous as to support a claim for intentional infliction of emotional distress. Further, the Plaintiff has failed to show that he has suffered the severe emotional distress necessary to sustain either of his claims. "Severe emotional distress" is defined as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Williams, 646 S.E.2d at 385 (quoting Johnson, 327 N.C. at 304, 395 S.E.2d at 97). There is no evidence in the record before the Court to indicate that the Plaintiff suffered severe emotional distress as a result of the Defendants' conduct. The Plaintiff testified that he mentioned the incident at the Charlotte airport to his counselor, whom he had been seeing already due to his separation. However, the Plaintiff has not produced any psychological or psychiatric

records indicating that he sought any specific treatment for emotional distress incurred as a result of the incident or that he suffers any severe and disabling emotional or mental disorder because of it. As such, the Court finds that the Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress must be dismissed.

### 9. Punitive Damages

In his ninth claim, the Plaintiff seeks punitive damages for the Defendants' conduct. [Complaint at 6]. Because all the Plaintiff's other claims have been dismissed, the Plaintiff's claim for punitive damages must be dismissed as well.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Dismiss [Doc. 14] is **GRANTED** with respect to the Defendant "Jane Doe (US Airways Employee)" and **DENIED** with respect to the Defendant US Airways Group, Inc.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment [Doc. 14] is **GRANTED** with respect to the Defendants US Airways, Inc. and US Airways Group, Inc.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**, and judgment shall issue simultaneously herewith.

Signed: November 2, 2007

Martin Reidinger
United States District Judge